E-FILED
Monday, 23 July, 2012 02:16:17 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| FRANKIE N. WALKER, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11-CV-3033 |
| | ) | |
| GUY GROOT and | ) | |
| STEVEN SCHOSTAK, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and detained in the Rushville Treatment and Detention Center, pursues First Amendment claims arising from a letter he sent to the director of a conditional release program. Defendants' motion for summary judgment is before the Court. For the reasons below the motion is denied.

SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

1

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. Id.; Harvey v. Town of Merrillville, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." McAllister v. Price, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a

reasonable juror could find for the nonmovant. Id.

FACTS

From July 2007 to June 2010, Plaintiff participated in voluntary psychiatric treatment at the Rushville Treatment and Detention Center.

In or around January, 2009, Plaintiff wrote a letter to Jerry Isikoff, who was the executive director of a conditional release program for sexually violent persons operated by an independent contractor, Liberty Healthcare Corporation. (Plaintiff's Response, p. 7, d/e 86.) Plaintiff does not dispute that a conditional release agent from this program is not assigned until a resident is found eligible for release. When Plaintiff wrote the letter to Mr. Isikoff, Plaintiff had not been ruled eligible for conditional release.

According to Plaintiff, he wrote to Mr. Isikoff in an attempt to assist Plaintiff's counsel in a state court challenge to Plaintiff's detention. In November, 2008, Plaintiff had submitted an evaluator's report in that proceeding which recommended Plaintiff for outpatient treatment. (Pl.'s Resp., p. 2, d/e 86; Pl.'s Dep. pp. 25-26, d/e 76-1.) Plaintiff describes his

letter to Mr. Isikoff as asking for information on finding an appropriate outpatient treatment program and asking for information about the conditional release program in general. Defendants do not dispute Plaintiff's representation that no inappropriate or threatening language was contained in his letter. However, Plaintiff admits that his letter did refer to his own evaluator's positive recommendation but failed to mention the contrary recommendation by the State's evaluator. Id. at p. 26.

 Though central to the case, Plaintiff's letter to Mr. Isikoff is not in the record. In fact, Defendants admit that they never possessed or read the letter. Plaintiff has tried valiantly to obtain a copy of the letter, but Mr. Isikoff purportedly no longer works at the conditional release program, and the program has no record of the letter. (Pl.'s Resp., Ex. LL2, d/e 86-16, p. 4.) Whether Mr. Isikoff even received Plaintiff's letter is not clear. Plaintiff questions whether the letter was intercepted by Defendants, since one of Defendants purportedly told Plaintiff that the

letter would be placed in Plaintiff's file.[1]  A juror might reasonably agree with Plaintiff, based on this admission and based on Defendant Groot's contradictory statements on how he came to know about the letter, discussed *infra*.  In any event, since the letter is not in the record, the Court accepts Plaintiff's description of what he wrote in the letter for purposes of this order.

Defendant Groot was Plaintiff's "Treatment Team Leader" when Plaintiff wrote the letter, which meant that Groot coordinated Plaintiff's psychiatric treatment by a team of persons (the "Treatment Team"). Defendant Groot avers in his first affidavit that he received a letter from Mr. Isikoff addressed to him asking for information about Plaintiff's letter.  (Groot Aff. ¶ 5, d/e 76-2, p. 2.)  However, Groot contradicts this averment in one of his interrogatory responses, stating instead that Shan Jumper, the facility's Clinical Director, had informed him about Mr. Isikoff's letter.  (Groot Resp. to Interrog. # 4, d/e 86-15, p. 8.)  Later he contends that Mr. Isikoff contacted him by telephone, though his second

---

[1] Plaintiff presents evidence he believes demonstrates other mail processing irregularities, but these incidents are not relevant.

affidavit says only that "I was informed that Plaintiff wrote to Jerry Isikoff and the contents of the letter." (Defs.' Notice of Compliance, d/e 96, ¶ 3; Groot Aff. ¶ 3, d/e 96-1). Mr. Isikoff's purported letter is not in the record, nor is his affidavit.

Despite having never seen Plaintiff's letter, Defendant Groot concluded that the letter was misleading. Groot believed the letter had implied that Plaintiff had been recommended for conditional release by the Department of Human Services. What facts formed the basis for this belief is not clear. Plaintiff admits in his deposition that he did not mention the State's evaluation in letter, but whether Defendants knew about this when they learned of the letter is not in the record. In any event, Plaintiff disagreed with Groot and maintained that the letter was not misleading and that he had a right to send it.

Defendant Groot informed Defendant Schostak and the rest of the Treatment Team about Plaintiff's letter. At that time, Schostak was working towards his Ph.D. in forensic psychology. Defendant Schostak was also concerned that Plaintiff's representations to Mr. Isikiff had been

misleading, presumably based on Groot's description since Schostak never saw the letter either. According to Schostak's progress notes, Plaintiff continued to "defend[] his decision to write to the C.R. program director without consulting his primary therapist" and continued to maintain that he had a right to write to whomever he wanted, with the exception of his victims. (Pl.'s Resp., Ex. MM, d/e 86-16, p. 8.) According to Plaintiff, Schostak told Plaintiff that the longer Plaintiff defended this position, the longer it would take to get back on track with Plaintiff's treatment. (Greenfield Aff., ¶ 5, d/e 86-16, p. 7.)

Plaintiff's Treatment Team, which included Defendants, decided to use the letter as a "teaching point." Plaintiff was asked to "outline a decision-making model addressing the inappropriate letter he wrote . . . identify[ing] any mistakes he may have made in misrepresenting himself or misleading the Conditional Release Program." (Defs.' Undisputed Fact 35, d/e 76.) Defendant Groot avers that he asked Plaintiff to consult with his Treatment Team before sending letters to conditional release agents. Defendants contend that this was a request, not a

7

requirement, but this is a disputed, material fact.  According to Plaintiff's deposition, Defendant Schostak told Plaintiff not to write to anyone about outpatient therapy programs without first consulting the Treatment Team.  (Pl.'s Dep. p. 33, d/e 76-1.)  A rational juror could conclude that Plaintiff was effectively prohibited from sending out letters to outpatient treatment programs without the approval of his Treatment Team.

Though Plaintiff felt he had done nothing wrong, he did not want to hold up his treatment progress so he acquiesced to Defendants' requests.  (Pl.'s Dep. p. 31, d/e 76-1.)  Defendant Schostak avers that Plaintiff "successfully complete[d] the decision-making model during which he admitted the letter he wrote to Mr. Isikoff was misleading." (Defs.' Undisputed Fact 36, d/e 76.)  However, Schostak does not attach any of the assignments Plaintiff was asked to complete.  Schostak noted in Plaintiff's progress notes that the letter reflected Plaintiff's continuing struggles with "mistrust of authority, resistance to seek guidance, reckless impulsiveness, need for control of his image and blaming external sources

for behavior." Id. The note further states that:

> Mr. Walker presented his decision making model addressing the inappropriate letter her [sic] wrote to a conditional release program. The critical problem with this decision making model was he added "failed to proofread it before mailing it." Initially Mr. Walker defended this statement, but eventually took it out because he realized the letter was inappropriate *whether or not he misrepresented himself* . . . .

(Defs.' Undisputed Fact 13, d/e 76)(emphasis added). A reasonable inference arises from the italicized language that Defendant Schostak believed that Plaintiff should not have written the letter at all, regardless of whether the letter was misleading.

Dr. Schostak avers that he had already identified Plaintiff's cognitive difficulties in prior notes, but he gives no examples and does not attach the notes to his affidavit. Plaintiff did have prior difficulties with his Treatment Team, though, as evidenced by a grievance before the letter incident. (Pl.'s Response, d/e 86-21, pp. 2-3). He also continued to have disagreements with his Team after the letter incident. Id. at pp. 4-5; d/e 86-22, pp. 1-3.

9

## ANALYSIS

Plaintiff has a First Amendment right to send outgoing mail, subject to the facility's legitimate concerns such as security and Plaintiff's rehabilitation. *See, e.g.*, Block v. Rutherford, 468 U.S. 576 (1984). Plaintiff's rehabilitation is the legitimate concern at issue in this case. If Defendants restricted Plaintiff's ability to send mail to outpatient treatment programs, the restriction would be constitutional if "reasonably related" to the Plaintiff's rehabilitation. Turner v. Safley, 482 U.S. 78, 89-91 (1987) discusses the factors relevant to the "reasonably related" inquiry: 1) the logical connection between the restriction and the concern; 2) the existence of other ways to exercise the right; 3) the impact of lifting the restriction; and, 4) the existence of less restrictive "ready alternatives." *See* Shaw v. Murphy, 532 U.S. 223, 229 (2001)(. . . Turner provides the test for evaluating prisoners' First Amendment challenges . . .). In applying these factors, "substantial deference" is owed to professional judgments, provided that professional judgment is in fact exercised and not a "substantial departure" from accepted

standards. *See* Youngberg v. Romeo, 457 U.S. 307, 320, 322 (1982); West v. Schwebke, 333 F.3d 745, 748 (7th Cir. 2003)("detainees are entitled to 'the exercise of professional judgment as to the needs of residents . . . .'").

Defendants argue that they did not restrict Plaintiff's right to send out mail because they only gave Plaintiff some extra therapy assignments and requested, but did not require, that Plaintiff consult them before contacting outpatient programs. However, looking at the facts in the light most favorable to Plaintiff, his regular treatment progress was halted until he admitted that any attempt by him to contact an outpatient program was inappropriate. A juror could also reasonably conclude that future letters to outpatient programs would bring further adverse consequences to his treatment progression. Therefore, a reasonable juror could find that Defendants hindered or restricted Plaintiff's ability to send outgoing mail.

The question is whether that restriction was reasonably related to Plaintiff's rehabilitation. Defendants have not demonstrated a valid,

rational connection between their actions and Plaintiff's rehabilitation. Even assuming a rational connection between a resident's rehabilitation and that resident's acknowledgment of misleading statements, how do Defendants know Plaintiff's letter was actually misleading? They never saw the letter. A juror could conclude that any attempt by Plaintiff to contact an outpatient treatment program was inappropriate from a therapeutic standpoint, regardless of whether the contact was "misleading." No professional justification for that conclusion is in the record. Accordingly, Plaintiff's First Amendment claim survives summary judgment.

Defendants' qualified immunity argument is rejected because the argument depends on their characterization of their actions as de minimis and the resolution of materially disputed facts in their favor. As discussed above and below, Defendants arguably conditioned Plaintiff's treatment progress on his agreement to refrain from contacting outpatient therapy programs. This is more than a de minimis imposition. *See, e.g.,* <u>Smego v. Payne</u>, 2012 WL 938687 at * 5 (7th Cir. 2012)(not

published in Federal Reporter)(reversing and finding sufficient evidence that "treatment that is essential to Smego's hopes of eventual release from Rushville has been at a standstill" because of Defendants' actions). Defendants also argue that qualified immunity applies because their decision was a discretionary one committed to their professional judgment. Yet as discussed above, a juror could find that Defendants effectively prohibited Plaintiff from contacting outpatient programs without their approval. They provide no professional justification for that prohibition.

Plaintiff also pursues a retaliation claim for exercising his First Amendment rights. To make out a prima facie case for retaliation at the summary judgment stage, Plaintiff must have evidence that he engaged in protected First Amendment activity, that this activity was "'at least a motivating factor'" for Defendants' adverse actions, and that the deprivation imposed by Defendants was significant enough to deter Plaintiff from exercising his First Amendment rights in the future. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012)(quoted cites

omitted).  If Plaintiff succeeds in this showing, Defendants must counter with evidence that the deprivation would have been imposed anyway, regardless of the retaliatory motive.  Greene v. Doruff, 660 F.3d 975, 979 (7th Cir. 2011).  Plaintiff must have evidence that would allow a reasonable juror to disbelieve Defendants' innocent explanation.  Kidwell v. Eisenhauer, 679 F.3d 957, 964 (7th Cir. 2012)(Ultimately, a plaintiff must prove that the deprivation would not have occurred "but for" the retaliatory motive).

    Defendants concede for purposes of this motion that Plaintiff's letter to Mr. Isikoff was protected speech.  As discussed above, Plaintiff suffered a deprivation significant enough to deter him from contacting outpatient treatment programs in the future.  As to the third element in Plaintiff's prima facie case, Plaintiff's letter was clearly a "motivating factor" behind Defendants' actions, arguably regardless of the letter's content.  The letter was also arguably the "but for" reasons for Defendants' actions.

    Plaintiff also contends that Defendants' actions were in retaliation

for Plaintiff's challenge to his detention in state court.  He offers evidence showing that the Treatment Team works with the State's evaluator to determine whether conditional release should be recommended, and evidence that the State evaluator's report relies on the Treatment Team's progress notes.  (Pl.'s Resp., d/e 86-17, pp. 2-3, 6-7.)  Plaintiff also submits a letter he sent to the Clinical Director in October, 2009, asking to be moved from Dr. Oberhausen's treatment group to a different treatment group because of feared conflicts of interest arising from Plaintiff's pending legal challenge to his detention proceedings.  Plaintiff contended in the letter that he was representing himself and was going to be subpoenaing members of his current Treatment Team.  (Pl.'s Resp., d/e 86-23, p. 1.)  His request was apparently denied.

 Drawing an inference that Defendants' actions were motivated by Plaintiff's state court challenge is difficult.  However, the Court cannot rule out such motivation.  An inference arises that Defendants knew about the state court proceeding, worked with the State evaluator who recommended against Plaintiff's release, and knew about Plaintiff's

opposition to the State evaluator's recommendation. The state court proceeding was pending at the time these events occurred. A juror might reasonably conclude that Defendants were motivated, at least in part, by Plaintiff's state court challenge to their professional conclusions. Qualified immunity is denied on this claim for the reasons discussed above.

Thus, this case will be set for trial. What damages might be available to Plaintiff beyond nominal damages may be difficult to determine, but that decision is premature. *See* Horina v. City of Granite City, 538 F.3d 624, 638 (7th Cir. 2008)(reversing district court's award of $2,100 for loss of First Amendment right where record had no evidence regarding actual injuries); City of Watseka v. Illinois Public Action Council, 796 F.2d 1547, 1559 (7th Cir. 1987)(damages are not available based on "abstract value" or "importance" of constitutional right violated; affirming $5,000 award for violation of First Amendment right where plaintiff demonstrated inability to recruit members and disseminate views).

IT IS THEREFORE ORDERED:

1) Defendants' motion for summary judgment is denied (d/e 76).

2)  The parties are reminded of their option to seek mediation.  The clerk is directed to send the parties the District's local rule on alternative dispute resolution.  CDIL-LR 16.4.

2) Plaintiff's "renewed motion for defaulted judgment and contempt" (d/e 95)  is construed as a motion to enforce Plaintiff's subpoena to Forrest Ashby.  Plaintiff appears to have served the subpoena on Ashby by certified mail.  Ashby does not appear to have responded.

The subpoena to Ashby (d/e 64) is overbroad to the extent mail records are sought from June 2008 to December 2011.  The relevant incidents here occurred primarily in January 2009 and the several months thereafter.  Accordingly, the Court narrows the dates set forth in the subpoena from October 1, 2009 to April 1, 2009.

**By August 19, 2012, Mr. Ashby is directed to respond to Plaintiff's motion to compel Mr. Ashby to comply with the subpoena.  The clerk is**

directed to send a copy of this order to Mr. Ashby at the Rushville Treatment and Detention Center and to Assistant Illinois Attorney General Jerrod Williams, who represents Mr. Ashby in another pending case.

3) By August 3, 2012, Defendants are directed to produce to Plaintiff and to file in court: 1) the letter from Mr. Isikoff purportedly written in response to Plaintiff's request, if it exists; and 2) the "decision making model" and any other therapy assignments Plaintiff completed relating to his letter to Mr. Isikoff. If Defendants do not have possession, custody, or control of these documents and cannot obtain them through reasonable efforts, they are directed to file, by August 3, 2012, affidavits explaining whether they personally saw and read these documents, and, if so, where the documents are located now, to their knowledge.

4) A final pretrial conference is scheduled for 3:30 p.m. on November 19, 2012. Defense counsel shall appear in person. Plaintiff shall appear by video conference. The parties are directed to submit an agreed, proposed final pretrial order at least fourteen days before the final

pretrial conference. Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference. *See* CD-IL Local Rule 16.3.[2]

    5) The clerk is directed to issue a video writ to secure the plaintiff's appearance at the final pretrial conference.

    6) The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference. Nonparty witnesses who are detained at the Rushville Treatment and Detention Center will testify by video. Other nonparty witnesses may appear by video at the Court's discretion. The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought. The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees. Fed. R. Civ. P. 45.

---

[2]The Local Rules are listed on this District's website: www.ilcd.uscourts.gov. A sample pretrial order is attached to those rules.

7) Jury selection and the jury trial are scheduled on the Court's trailing trial calendar for January 8, 2013. The actual trial date will be set at the final pretrial conference.

8) After the final pretrial order is entered and a final trial date is set, the Clerk is directed to issue the appropriate process to secure the personal appearance of Plaintiff at the trial and the video appearances of the video witnesses at the trial.

ENTERED: July 23, 2012

FOR THE COURT:

                                                    s/Sue E. Myerscough
                                                    SUE E. MYERSCOUGH
                                        UNITED STATES DISTRICT JUDGE